

```
      FILED
U.S. DISTRICT COURT
 
2000 JUN -8  P 2: 52

LORETTA G. WHYTE
```

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BATTURE FLEET, INC.** | **CIVIL ACTION** |
| versus | **NO. 00-0205** |
| **CAROL BROWNER, et al.** | **SECTION "C" (2)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) filed by Defendants Carol Browner, in her official capacity as Administrator of the United States Environmental Protection Agency ("EPA"); Greg A. Cooke, in his official capacity as Regional Administrator, EPA Region VI; Admiral James Loy, in his official capacity as Commandant of the U.S. Coast Guard; and Captain Steven Rochon, in his official capacity as U.S. Coast Guard Captain of the Port of New Orleans. For the reasons explained below, the Court GRANTS Defendants' Motion to Dismiss.

DATE OF ENTRY
JUN - 9 2000

___ Fee
___ Process
_X_ Dktd
_✓_ CtRmDep
___ Doc.No.

I.  **FACTS**

Batture Fleet, in conjunction with its parent corporation, Bayou Fleet, Inc.,[1] operates a barge fleeting facility in Hahnville, Louisiana. The facility covers approximately thirty-five (35) acres situated between the Mississippi River and the river levee. The site has been used for its current purposes periodically over the past fifty (50) years. Batture Fleet has operated the site since succeeding the previous operator, Oil Transport Company ("Oil Transport"), in 1995.

In 1999, the Coast Guard and the EPA received citizen complaints raising concern over potential releases from the property.[2] The Coast Guard conducted aerial thermal imaging of the site and allegedly identified anomalies consistent with hazardous materials.[3] The Coast Guard now proposes further investigation to determine whether a response action is necessary. Specifically, the Coast Guard, along with the EPA's technical assistance, seeks to perform an allegedly non-intrusive geophysical assessment surveying the site and to conduct limited soil sampling in certain areas of

---

[1]   Bayou Fleet, Inc. is not a party to this suit.

[2]   The previous history of the site sheds some light on the current situation. (As is explained below, however, the Court does not find that the previous action has any bearing on the issue presently before the Court.) In the early 1990s, the Coast Guard oversaw a response action on the property. The action ultimately resulted in the removal between 1990 and 1992 of oil, asphaltic material, visibly contaminated soil, and the hulls of abandoned barges. The Louisiana Department of Environmental Quality ("LDEQ") became involved in the cleanup in 1991, reaching a settlement agreement with Oil Transport requiring, among other things, that Oil Transport conduct a site assessment, including soil sampling, under the oversight of the LDEQ. Oil Transport filed for bankruptcy in 1993, allegedly because of the costs associated with the environmental cleanup. The soil sampling was never completed.

[3]   The EPA and the Coast Guard divide responsibility geographically for oversight of environmental cleanup matters. Under an agreement between the two government entities, the Coast Guard maintains responsibility for cleanup in areas between the Mississippi River and its levee. Thus, the Coast Guard has principal responsibility in assessing and addressing any potential environmental threats on the Batture Fleet facility.

2

interest. These actions, as alleged by the Coast Guard, will determine whether any additional response action is necessary.

Batture Fleet filed the instant suit on January 21, 2000 to obtain a declaratory judgment ruling that its property does not pose a danger of a release or the threat of a release of a hazardous substance as regulated under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675, or the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, *et seq*. Specifically, Batture Fleet seeks a declaratory judgment in this matter to prevent the EPA and/or the Coast Guard from entering its property to conduct any investigation into violations of CERCLA and/or OPA. *See* Complaint, Rec. Doc. 1.

On March 15, 2000, Batture Fleet filed a First Supplemental and Amending Verified Complaint for Declaratory Judgment, Temporary Restraining Order and Preliminary and Permanent Injunctive Relief after the Coast Guard requested access to the site to conduct the testing described above. *See* Rec. Doc. 19. The Court denied the Supplemental and Amended Verified Complaint as moot after the Coast Guard assured that it would not enter the property without first obtaining Batture Fleet's consent or a Court Order directing Batture Fleet's compliance. *See* Rec. Doc. 20.

The Defendants now seek dismissal of the suit, arguing that CERCLA's jurisdictional limitations prevent a federal court from considering any preenforcement challenge to an ongoing environmental investigation and response action. Batture Fleet, however, contends that the lengthy history of cleanup activity at the site basically contradicts the statutory purpose for barring preenforcement suits– prevention of undue delay in cleanup operations. In the event that the Court finds that CERCLA does preclude jurisdiction, Batture Fleet asks for leave to amend its complaint to add a plea for a declaratory judgment assessing the costs of the proposed enforcement actions.

## II. ANALYSIS

### A. Standard of Review

The standard of review for motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) is the same as the standard for reviewing dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). The moving party bears the burden of showing that "plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief." *Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). The reviewing court "must accept all well-pleaded factual allegations in the light most favorable to the non-moving party." *American Waste & Pollution Control Co. v. Browning Ferris Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). Conclusory allegations or legal conclusions however will not suffice to defeat a motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). A court's ultimate conclusion that a case should be dismissed may rest "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996) (citations omitted).

### B. Discussion

#### 1. *Defendants' Motion to Dismiss*

Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), establishes strict limitations on the

jurisdiction of federal courts to hear suits challenging CERCLA environmental response actions.[4]

The statute expressly prohibits federal court jurisdiction except in five limited situations.[5]

Several cases have reviewed the plain statutory language of Section 113(h) and the legislative

---

[4] Both parties have argued the substance of this motion exclusively on the CERCLA jurisdictional issue. Specifically, Batture Fleet has not pointed to any provision in OPA that would save this Court's jurisdiction if CERCLA bars jurisdiction over this action. Thus the Court does not look to OPA for any guidance in resolving the issues now before it.

[5] The statute reads as follows:

> Timing of review. No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
> (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
> (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such an order.
> (3) An action for reimbursement under section 9606(b)(2) of this title.
> (4) An action under section 9659 of this title (relating to citizen suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
> (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

history behind the limitation of federal court jurisdiction.[6] Uniformly, the courts that have considered the statute have concluded that CERCLA bars preenforcement legal challenges to environmental response actions. The Sixth Circuit succinctly encapsulated the jurisdictional bar on preenforcement actions as follows: "CERCLA's language shows Congress concluded that disputes about who is responsible for a hazardous site, what measures actually are necessary to clean-up the site and remove the hazard or who is responsible for its costs should be dealt with after the site has been cleaned up." *Boarhead*, 923 F.2d at 1019.

The instant case clearly seeks a declaratory judgment challenging a CERCLA intervention before any enforcement action and is thus barred by the statutory language of Section 113(h). Accordingly, this Court cannot interfere in the actions of the Coast Guard and/or the EPA before those actions are complete, regardless of any alleged legitimate arguments Batture Fleet may assert to challenge the proposed actions.[7]

Batture Fleet argues extensively that the current proposed actions are merely long-delayed

---

[6] *See, e.g., Fairchild Semiconductor Corp. v. U.S. Environmental Protection Agency*, 984 F.2d 283, 288 (9th Cir. 1993); *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 293 (6th Cir. 1991); *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1019-20 (3d Cir. 1991); *Schalk v. Reilly*, 900 F.2d 1091, 1095-96 (7th Cir.), *cert. denied sub nom. Frey v. Reilly*, 498 U.S. 981, 111 S. Ct. 509, 112 L. Ed.2d 521 (1990); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1386-88 (5th Cir. 1989); *City of New Orleans v. Browner*, No. 99-0756, 1999 WL 179347, at *1-*2 (E.D. La. Mar. 31, 1999); *Concerned Citizens of Agriculture Street Landfill, Inc. v. Browner*, No. 98-0124, 1998 WL 104656, at *1-*3 (E.D. La. Mar. 9, 1998).

[7] Specifically, Batture Fleet alleges that the thermal imaging employed by the Coast Guard is scientifically unaccepted. Batture Fleet's allegation that thermal imaging is insufficient to establish a release or a threat of a release supports its argument that the threshold for CERCLA intervention has not yet been reached. However, the Court finds that this argument is a circular attempt at challenging a preenforcement action and thus does not escape Section 113(h)'s strict jurisdictional bar. In fact, even if no concrete report indicated a release or a threat of a release, Section 113(h) would still bar this Court from exercising jurisdiction over this preenforcement suit.

extensions of the activity commenced in the early 1990s and thus that the main purpose of the jurisdictional bar– preventing unnecessary delays in cleanups– is inapplicable in this case. However, the Court finds that, even if the current action is a long-delayed continuation, a suit to challenge the action before its completion is still barred by the statute. Moreover, the Fifth Circuit expressly ruled in *Voluntary Purchasing Groups* ("*VPG*") that the jurisdictional bar operates even where prevention of delay is not a factor.[8] *See* 889 F.2d 1388-89.

Furthermore, the dismissal of the instant case will not prejudice Batture Fleet indefinitely. Rather, the statutory scheme permits Batture Fleet to challenge any enforcement action once it actually occurs. The Court understands Batture Fleet's feeling that an ax is about to fall arguably unfairly.[9] However, the Fifth Circuit explained in *VPG* that, even though the inability to initiate a suit "may result in a material adverse impact on some aspects of . . . [a complaining party's] ability to conduct its business," the statute binds the federal courts to decline jurisdiction "unless . . . Congress acts to change the situation." 889 F.2d at 1390, n.18.

---

[8] In *VPG*, the EPA had sent a letter to the plaintiff, a cooperative farming manufacturer of lawn, garden, and farm chemicals, identifying the plaintiff as a possible potentially responsible party for the costs of a completed EPA cleanup action of a hazardous site. However, because the government had not instituted a cost recovery action, the Fifth Circuit held that Section 113(h) barred the manufacturer's suit for a declaratory judgment of non-liability for the EPA response action. After acknowledging the commonly cited reason for the jurisdictional limitations– prevention of unnecessary litigation-caused delays in cleanups, the court nonetheless concluded that Section 113(h)'s strict language barred even VPG's case, which could not have delayed any cleanup because it was brought after the cleanup was concluded. *See* 889 F.2d 1388-89.

[9] Batture Fleet contends that it has operated a clean site and that local political forces and competing businesses are targeting the business unfairly. The Court assumes the Coast Guard will conduct its inspections on the merits, without regard to any alleged motives of the complaining non-parties.

### 2. *Batture Fleet's Request in the Alternative*

If this Court does find that it is without jurisdiction to hear this case (as the Court has), Batture Fleet seeks to amend its complaint to add a plea for a declaratory judgment assessing response costs. *VPG* however expressly precludes a preenforcement declaratory judgment suit to determine liability. Batture Fleet argues that footnote 11 in *VPG* supports its right to bring a declaratory action under the facts of this case. *See* 889 F.2d 1387, n.11.

Footnote 11 addresses *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F. Supp. 283 (N.D. Cal. 1984). In that case, a federal district court in California permitted a suit seeking a declaration of non-liability for costs prior to the filing of a cost-recovery suit. The Court found that "[i]n cases in which either the government or a private party has expended response costs, courts have not hesitated to grant [them] declaratory relief." *Id.* at 291.

Batture Fleet's reliance on this footnote is misplaced. Batture Fleet cannot claim the response costs expended by Oil Transport in the early 1990s, which Batture Fleet alleges drove Oil Transport into bankruptcy, as a reason to grant Batture Fleet declaratory relief. Batture Fleet and Oil Transport are different companies. Moreover, it is far from clear that the Fifth Circuit approved of the result in *Pinole Point*; rather the footnote merely notes that other courts have found such actions proper but that the case before the Fifth Circuit involved a different scenario and thus was distinguishable.[10] Therefore, even if Batture Fleet had borne response costs, footnote 11 would not automatically

---

[10] In *Georgoulis v. Allied Products Corp.*, 796 F. Supp. 986 (N.D. Tex. 1991), a court bound by Fifth Circuit precedent found, after *VPG*, that it lacked jurisdiction over a plaintiff's suit for declaratory judgment assessing liability for past or future costs. In fact, in that case also, the plaintiff succeeded a previous owner that had experienced some previous difficulties with environmental problems. The plaintiff, through the dismissed action, attempted to absolve itself of any liability for the previous owner's problems. In essence, this is what Batture Fleet asserts that it wishes to do if the Court finds that it lacks jurisdiction over its primary challenge.

sanction its declaratory judgment suit.[11] Consequently, the Court finds that the footnote is not sufficient to support Batture Fleet's request for leave to amend its petition and thereby maintain the current suit.[12]

### III. CONCLUSION

After review of the memoranda submitted by the parties, the case record, and the applicable law, the Court finds that CERCLA Section 113(h) bars jurisdiction over this case. Furthermore, the Court finds there is insufficient basis for Batture Fleet's request in the alternative for leave to amend its petition.

Therefore, **IT IS ORDERED** that Defendants' Motion to Dismiss is hereby **GRANTED**. Accordingly, **IT IS ORDERED** that this case is hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

New Orleans, Louisiana, this 8th day of June, 2000.

---

HELEN G. BERRIGAN,
UNITED STATES DISTRICT JUDGE

---

[11] The Court notes that Batture Fleet has allegedly spent more than $50,000 in this matter. However, these are not response costs to remedy an identified environmental threat. The action has yet to occur. And, even if Batture Fleet is correct that the action is ongoing from the early 1990s, its current expenditures are still not response costs because no response action has occurred during Batture Fleet's tenure at the site..

[12] A district court has discretion to dismiss a motion to amend that is "frivolous or futile." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 771 (5th Cir. 1999).